**Helge Naber**
Montana Bar Id. 7059
NABER PC
300 Central Avenue Suite 320
Great Falls Montana 59401
T 406 452 3100
F 406 452 6599
E helge.naber@naberpc.com
ATTORNEY FOR K.E.N. & ACTING *PRO PER*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA

---

|  |  |
|---|---|
| **K.E.N.,** <br> minor child | * <br> * CAUSE No. 15-cv-_____ <br> * |
| **and** | * |
| **HELGE NABER** <br> *pro per* & *ex. rel.* K.E.N. | * <br> * |
| *- Petitioners & Affected Parties -* | * |
| **vs.** | * |
| **MONTANA DEPARTMENT OF PUBLIC HEALTH & HUMAN SERVICES** | * |
| **RICHARD OPPER,** <br> its Director | * |
| *- State Respondents -* | * |
| **and** | * |
| **U.S. DEPARTMENT OF AGRICULTURE** | * |
| **TOM VILSACK** <br> U.S. Secretary of Agriculture | * |
| *in loco parentis* of the State Defendants | * |
| *- Federal Respondents -* | * |

John STROPPEL,                          *
an employee of the State Defendants     *
                                        *
Carolyn KOVACH                          *
an employee of the State Defendants     *
                                        *
Lynn KUTLER                             *
an employee of the State Defendants     *
                                        *
        - Individual Respondents -      *
                                        *
_____

## SECOND AMENDED PETITION FOR REVIEW, CLAIMS UNDER 18 U.S.C. § 28 U.S.C. §2674, 42 U.S.C. §1983, 28 U.S.C. §2412(d) & SUSPENSION OF FUNDING

_____

Applicants K.E.N., a minor, and Helge Naber, acting *pro se*, hereby respectfully petition the Court for review of an order issued by the Montana Department of Public Health & Human Services' Board of Public Assistance deposited to be served on 27 Februrary 2015, and plea, present, and reason as follows:

PARTIES TO AND NATURE OF PROCEEDINGS

**1.** Petitioner K.E.N. is a minor child born in 2013 („K.E.N."). Petitioner Helge Naber is his natural father („Helge") (collectively „Petitioners" or „Affected Parties"). Dawn McGee („Dawn") is his natural mother. See Acknowledgment of Paternity executed 22-Aug-13 attached hereto as *Exhibit 01*.

**2.** The Montana Department Pulibc Health & Human Services („MtDPHHS") is a governmental subdivision of the State of Montana established pursuant to Mont. Code Ann. §§2-15-2201 with an annual budget of approximately $2 billions, derived in significant parts through federal funding provided through the mechanisms set forth in 7 U.S.C.

§2025. Respondent MtDPHHS carries out a variety of federal programs, including but not limited to the Supplemental Nutrition Assistance Program („SNAP") under 7 U.S.C. §§2011 et. seq. Respondent Richard Opper is the executive officer ultimately responsible for Respondent MtDPPHS's actions and operations (collectively „State Respondents").

**3.** Respondent U.S. Department of Agriculture is the federal agency having delegated its powers and authorities to the State defendants to carry out the SNAP program. Tom Vilsack is the executive officer ultimately responsible for Respondent U.S. Department of Agriculture's actions and operations (collectively „Federal Respondents"). The Federal Respondents stand in a superior, supervisory relationship to the State Respondents which powers the State Respondents exercises on its behalf, and are utlimately responsible for the State Respondents' actions *in loco parentis*.

**3.** Ms. Carlyn KOVACH was, at the times pertinent to this matter, the case worker employed by the State Respodents. Mr. John STROPPEL oversees the adminstration of SNAP- and other benefits locally and was, at the times pertinent to this matter, employed in a supervisory capacity by the State Respondents („Individual Respondents"). The Individual Respondents may or may not have been acting within the scope of their resepctive employment.

**4.** This petition concerns review of certain actions undertaking by the State Respondents through the Individual Respondents, and aquiesed to by the Federal Respondents, to the detriment of the Affected Parties in violation of Federal Constituional, statutory, regulatory, and common law, and in violation of Montana statutory, regulatory and common law.

## JURISDICTION & VENUE

**5.** "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." 5 U.S.C. §703.

**6.** The Court further retains jurisdiction pursuant to 28 U.S.C. §§1331, 1346 and 1651.

**7.** Venue in the District of Montana is proper because Petitioners are residents of the District and reside in Cascade County. See 28 U.S.C. §1402(a)(1).

## PERTINENT FACTUAL BACKGROUND

**8.** Dawn and Helge, though not married, live in the same house with their respective children. Helge has two minor children, Dawn has four minor children. K.E.N. is the only child between them. Dawn and her four minor children have been beneficiaries of the Supplemental Nutrition Assistence Program („SNAP") and Medicaid administered by the State Respondents since prior to K.E.N.'s birth. K.E.N. was born 19 August 2013. Helge and his two minor children have never asked for any benefits under either program. Helge and Dawn adhere to an agreement regarding the care, support, and upbringing of K.E.N.

**9.** On 21 October 2013, about 2 months after K.E.N. was born, the State Respondents *sua sponte* enrolled K.E.N. as a beneficiary to the

Medicaid program. See MTDPHHS Approval Notice [Doc #6083209] dated 21-Oct-13 attached hereto as *Exhibit 02*.

**10.** On 28 October 2013, Dawn informed the State Respondents that K.E.N. did not and does not seek any benefits under the Medicaid program. See Letter Dawn/MTDPHHS mailed 28-Oct-13 attached hereto as *Exhibit 03*.

**11.** Also on 28 October 2013, the State Respondents nonetheless sent K.E.N. a „Healthy Montana Kids" id card. See MTDPPHS Id Card 5036256 received 28-Oct-13 attached hereto as *Exhibit 04*. Dawn returned the id card to State Respondents on 30 October 2013. See Letter Dawn/MTDPPHS dated 30-Oct-2013 attached hereto as *Exhibit 05*.

**12.** Ignorant of Dawn's letters mailed on 28 October 2013 and 30 October 2013, and contrary to its previous reminder to Dawn to designate a „Passport Provider" for K.E.N. by 22 November 2013, State Respondents unilaterally chose a „Passport Provider" for K.E.N. on 11 November 2013. See MTDPHHS Notice of Provider Choice dated 11-Nov-2013 attached hereto as *Exhibit 06*.

**13.** Still ignorant of Dawn's letters mailed on 28 October 2013 and 30 October 2013, on 22 November 2013, the State Defendants confirmed their choice (sic!) for a „Passport" provider for K.E.N. See MTDPHHS Provider Confirmation dated 22-Nov-2013 attached hereto as *Exhibit 07*.

**14.** On 13 March 2014, the State Respondents mailed Dawn an eligibility notice concerning SNAP benefits, and *sua sponte* included K.E.N. as a benefiary in her household. See MTDPHHS Eligibility Notice [Doc #4156898] dated 13-Mar-14 attached hereto as *Exhibit 08*.

**15.** Also on 13 March 2014, the State Respondents mailed Dawn General Information concerning her SNAP benefits, and requested

information concerning Helge's income for the first quarter 2014 and advising her that her SNAP benefits would cease if she does not provide the information requested. See MTDPHHS General Information [Doc #4156965] dated 13-Mar-14 attached hereto as *Exhibit 09*.

**16.** On 14 March 2014, State Respondents mailed Dawn three identical denial notices, apparently concerning an application for Medicaid benefits dated 11 March 2011. Neither of these notices identify the applicant or beneficiary to which it may pertain nor does it provide any reason for the denial. See MTDPHHS Denial Notice [Doc #6978717] dated 14-Mar-14 attached hereto as *Exhibit 10*, MTDPHHS Denial Notice [Doc #6978721] dated 14-Mar-14 attached hereto as *Exhibit 11* and MTDPHHS Denial Notice [Doc #6978725] dated 14-Mar-14 attached hereto as *Exhibit 12*.

**17.** Also on 14 March 2014, State Respondents mailed Dawn General Information concerning her SNAP benefits, and requested information concerning her income in 2013 as well as the first quarter of 2014, advising her that her SNAP benefits would cease if she does not provide the information requested. See MTDPHHS General Information [Doc #4171455] dated 14-Mar-14 attached hereto as *Exhibit 13*.

**18.** On 21 March 2014, Dawn responded to State Respondents' Eligibility Notice Doc #4156898 and requested K.E.N. to be removed as a beneficiary of SNAP benefits as he has not sought and is not seeking any benefits. See DMc Reply Letter Doc #4156898 dated 21-Mar-14 attached hereto as *Exhibit 14*.

**19.** Also on 21 March 2014, Dawn responded to Respondents' General Information Doc #4171455. See DMc Reply Letter Doc #417455 dated 21-Mar-14 attached hereto as *Exhibit 15*.

**20.** Also on 21 March 2014, Dawn responded to Respondents' General Information Doc #4156965 regarding Helge's income. See DMc Reply Letter Doc #4156965 dated 21-Mar-14 attached hereto as *Exhibit 16*.

**21.** On 31 March 2014, Respondents mailed Dawn an Eligibility Notice Doc #4280776 concerning SNAP benefits still including K.E.N., advising Dawn that SNAP benefits have been extended until September 2014. See MTDPHHS Eligibility Notice [Doc #4280776] dated 31-Mar-14 attached hereto as *Exhibit 17.*

**22.** On 1 April 2014, Respondents mailed Dawn an Eligibility Notice Doc #4284360 terminating SNAP benefits as of 30 April 2014 for failure to provide information concerning Helge's income, „alien status, social security number, date of birth, income, [and] resources". See MTDPHHS Eligibility Notice [Doc #4284360] dated 1-Apr-14 attached hereto as *Exhibit 18*.

**23.** Upon information and belief, also on 1 April 2014, Dawn administratively appaeled, i*nter alia*, State Respondents' Eligibility Notice Doc #4156898 with respect to the inclusion of K.E.N., the consequences announced in State Respondents' General Information Doc #4156965, and the „consolidation of households" based on a common child, as inferred to in State Defendant's Eligibility Notice Doc #4284360. Subsequently, an administrative review procedure commenced with Office of Fair Hearings of the Respondents („OFH"), case no. 14-1474. Helge entered an appearance on behalf of K.E.N. in Administrative Appeal Case No. 14-1474. See Memorandum & Scheduling Order OFH14-1474 dated 27-Jun-14 attached hereto as *Exhibit 19*.

**24.** On 5 May 2014, Respondents mailed Dawn an eligibility notice concerning SNAP benefits still including K.E.N., advising Dawn that SNAP benefits have been extended until September 2014. See MTDPHHS

Eligibility Notice [Doc #4533879] dated 5-May-14 attached hereto as *Exhibit 20*.

**25.** On 11 June 2014, all parties involved reached a stipulation of fact that Dawn and Helge are not married, that Dawn and Helge share a house, that neither Dawn nor Helge ever sought any benefits for K.E.N., and that Dawn and her respective children and Helge and his respective children are considered separate households pursuant  7 C.F.R. §273.1(a)(3). See Joint Stipulation OFH14-1474 executed 11-Jun-14 attached hereto as *Exhibit 21*.

**26.** Upon hearing, the OFH concluded in reliance upon an non-binding agency policy interpretation nonetheless that „it is clear that Claimant, K.E.N., and Naber must be included in the same household under the provisions of SNAP 201-1". See Order Granting Summary Judgment to Department OFH 14-1474 dated 19-Sep-14 attached hereto as *Exhibit 22*.

**27.** Both Dawn and K.E.N. appealed the OFH decision to the Respondents' Board of Public Assistance („BoPA"). BoPA concluded that OFH's conclusions were correct, and affirmed OFH's disposition of the matter. BoPA's order was given to the United States Postal Service for service upon the parties on 27 February 2015. See Order Affirming BoPA14-1474 issued 25-Feb-15 attached hereto as *Exhibit 03*.

**28.** This petition for review under 5 U.S.C. §§701 et. seq. invoked by the Affected Parties follows.


## A. PETITION FOR REVIEW
[5 U.S.C. §§701 et. seq.]

## APPLICABLE LEGAL PRINCIPALS

**1.** Pursuant to 7 U.S.C. §2011, a „supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households <u>who apply for participation</u>" (emphasis added).

**2.** Pursuant to 7 U.S.C. §2012(n)(1)(A), „household means an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others".

**3.** Pursuant to 7 U.S.C. §2012(n)(2), household also means „spouses who live together, parents and their children 21 years of age or younger who live together, and children (excluding foster children) under 18 years of age who live with and are under the parental control of a person other than their parent together with the person exercising parental control shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so".

**4.** Pursuant to 7 C.F.R. §273.1(a)(2), „a household is composed [...] of an inidividual living with others, but customarily purchasing food and preparing meals for home consumption separate and apart from others", unless otherwise specified in paragraph (b) of that section.

**5.** Pursuant to 7 C.F.R. §273.1(b), a person under 22 years of ago who is living with his or her natural or adoptive parent(s) or step-parents must be considered as customarily purchasing food and preparing meals with the others, even they do not do so, and thus must be included in the same household, unless otherwise specified.

**6.** Pursuant to 7 C.F.R. §273.1(c), for situations that are not clearly addressed by the provisions of paragraphs (a) and (b) of this section, the

State agency may apply ist own policy for dertermining when an individual is a separate household or a member of another household if the policy is applied fairly, equitably and consistently throughout the State.

**7.** Pursuant to Mont. Code Ann. §53-2-603, „[u]pon completion of an application, the department [...] shall determine whether the applicant is eligible for public assistance under the provisions of this title [...]" (emphasis added).

**8.** Pursuant to Mont. Code Ann. §2-1-402(1)(b), „the intent of the [Montana] legislature is to ensure the primacy of the state of Montana's legal and polical authority to implement in and for Montana the policy mandated by federal statutes and to vigorously challenge and scrutinize the extent and scope of authority asserted by the federal executive branch agencies when federal agency actions and interpretations are inconsistent with Montana policy and exceed the lawful authority of the federal government or are not required by federal law." (Emphasis added).

**9.** Pursuant to Mont. Code Ann. §2-1-402(2), „the [Montana] legislature further finds and declares that (a) there is an urgent need to modify federal mandates because the implementation of these mandates by the state wastes the financial resources of local governments, the citizens of Montana, and the state and does not respect the rights of local government, citizens, and the state; [and] (b) the state government has an obligation to the public to what is necessary to protect the rights of Montana citizens under federal law while minimizing or eliminating any additional cost or regulatory burden on any citizen of the state". (Emphasis added).

STANDARD OF REVIEW

Pursuant to 5 U.S.C. §706,

„To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability oft he terms of an agency action. The reviewing court shall
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
 (D) without observance of procedure required by law;
 (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
 (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

## MEMORANDUM IN SUPPORT OF REVIEW

## I. Allocating K.E.N. to Dawn's Household Rather Than to Helge's for Purposes of 7 U.S.C. §2012(n)(2) Violates the Affected Parties' Constitutional Right to Enjoy the Companionship, Care, And Custody of One Another.

**1.** There is a fundamental right of parents to make decisions concerning the care, custody, and control of their children. See Stanley v. Illinois, 405 U.S. 645, 651 (1972); Quilloin v. Walcott, 434 U.S. 246, 255 (1978). Parenting one's own children is a fundamental right extended equally to both parents. See Weinberger v. Wiesenfeld, 420 U.S. 636 (1975). „A father, no less than a mother, has a constitutionally protected right to the companionship, care, custody, and managment of the children he has sired and raised, which undeniably warrants deference, and, absent a powerful countervailing interest, protection." Id. at 652. „The custody, care, and nuture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder [...]." Ginsberg v. New York, 390 U.S. 629, 639 (1968).

**2.** Allocating K.E.N. to Dawn's household rather than Helge's is arbitrary, at best. It is undisputed that K.E.N. has been included in Dawn's household and excluded from Helge's household by MTDPHHS' own omnipotence. See <u>MTDPHHS CHIME Note cs2179</u> generated 6-Nov-13 attached hereto as *Exhibit 24*. The State Respondents have not alleged or alluded to – let alone shown – a „powerful countervailing government interest" in doing so. Thus, the State Respondents violated K.E.N. and Helge's Constitutional rights as established and refined under <u>Weinberger</u>, 420 U.S. 636 (1975).

**II. Allocating K.E.N. to Dawn's Household Rather Than to Helge's for Purposes of 7 U.S.C. §2012(n)(2) Violates the Equal Protection Clause of U.S. Const. Amend. Amend. V and XIV Because There is No Powerful Countervailing Interest Justifying Preferring Dawn Over Helge.**

**1.** It is undisputed that Dawn (and her respective biological children) and Helge (and his respective biological children) are two separate households for purposes of 7 U.S.C. §2012(n) even though they all live in the same residence. See <u>Joint Stipulation 14-1474</u> executed 11-Jun-14 attached hereto as *Exhibit 21*. „The ‚household' definition does not order or prevent groups of persons from dining together". See <u>Lyng v. Castillo</u>, 477 U.S. 635, 638 (1986).

**2.** The issue here is to whose household K.E.N. must be attributed for purposes of 7 U.S.C. §2012(n)(2), 7 C.F.R. §273.1(b), if any. Neither Dawn nor Helge desire K.E.N. to be a SNAP beneficiary. See <u>Joint Stipulation OFH14-1474</u> executed 11-Jun-14 attached hereto as *Exhibit 21*. Consequently, neither has submitted an application for K.E.N. to receive any SNAP benefits, as required by 7 U.S.C. §2011 and Mont. Code Ann.

§53-2-603. See id. They composed a living arrangement constituting two distinct households under 7 U.S.C. §2012(n)(1), one that has applied for SNAP benefits before K.E.N. was born, and one that has not. K.E.N. has not changed that. 7 U.S.C. §2012(n)(2) advises that children who live with their parents cannot be considered a separate household. Therefore, K.E.N. should be attributed to Helge's household composition under 7 U.S.C. §2012(n)(1): it is least intrusive to Affected Parties' rights, saves the Federal Respondents all the funds otherwise payable directly to the State Respondents under 7 U.S.C. §2025(a), executes Federal programs in adherence of the mandates imposed by Mont. Code Ann. §2-1-402, and could be easily resolved under 7 C.F.R. §273.1(c).

**3.** The State Respondents, however, for reasons further explored *infra*, proceeded in an unconstitutionally discriminatory fashion and decided K.E.N. should be part of Dawn's 7 U.S.C. §2012(n)1)-household. See MTDPHHS Eligibility Notice [Doc #4156898] dated 13-Mar-14 attached hereto as *Exhibit 08*. Such *sua sponte* inclusion does not only lack the mandatory application for benefits to be extended pursuant to 7 U.S.C. §2011 and Mont. Code Ann. §53-2-603; more importantly it also violates the principles of equal protection as established under U.S. Const. Amend. Amend. V and XIV. Dawn's household is as entitled as Helge's to include him. See Weinberger v. Wiesenfeld, 420 U.S. 636, 652 (1975). It is either or both parents' unimpeachable prerogative to make that decision or to not make it at all. See Ginsberg v. New York, 390 U.S. 629, 639 (1968). Dawn and Helge's decision to not seek benefits for K.E.N. must be unrevocably respected, whether consistent with and convenient to the State Respondents' other motivations or not.

### III. Abusing Dawn's Economic Position to Elicit Private and Confidential Information about Helge Violates Helge's and K.E.N.'s Right to Remain Free From Unreasonable Search and Seizures as Guaranteed Under U.S. Const. Amend. IV.

**1.** Upon ignition of this matter, the State Respondents threatened Dawn to withhold SNAP benefits from her respective household if Dawn did not reveal certain financial information about Helge. See MTDPHHS General Information [Doc #4156965] dated 13-Mar-14 attached hereto as *Exhibit 09*. Dawn responded – truthfully – that she does not have the requested information. See DMc Reply Letter Doc #4156965 dated 21-Mar-14 attached hereto as *Exhibit 16*. Impossibility is a completed defense to civil contempt. See Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983); U.S. v. Rylander, 656 F.2d 1313, 1317 n.4 (9th Cir. 1981). The State Respondents nevertheless proceeded.

**2.** „The right of the people to be secure in their persons, homes, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. Amend. IV. This long-standing principle and the fundamental rights developed thereunder

> "apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property . . . . Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation . . . [of those Amendments]." Mapp v. Ohio, 367 U.S. 643, 646-647 (1961) [citing Boyd v. U.S., 116 U.S. 616, 630 (1886)].

**3.** The State Respondents sought documentation and information from Dawn concerning Helge's financial affairs. The State Respondents did not ask Helge directly because they know they have no right to do so. The State Respondents also knew that Dawn does not have the information

they desired. Hence, their persistence in penalizing Dawn is retailiatory against Dawn in lieu of her rights under U.S. Const. Amend. Amend. IV, V, and XIV. Their request also violates Helge's and K.E.N.'s right against compulsory extortion of their private papers and affairs under U.S. Const. Amend. IV. Neither Helge nor anyone in Helge's household asked the State Defendants for anything.

## B. CLAIMS UNDER 28 U.S.C. §2674

### FIRST FEDERAL TORT CLAIM
[28 U.S.C. §2674, <u>Deserly v. Mont. Dept. of Corrections</u>, 2000 MT 12, 995 P.2d 972]

**1.** The Affected Parties reassert the allegations contained in ¶¶1 through 4, 6, 8, 14, 15, 18, 20 & 22, *supra*.

**2.** Individual Respondent KOVACH created, designed, or composed, and caused Eligibilty Notice Doc #4156965, 4  to be sent to Dawn inquiring about Helge's personal information such as social security number, financial information, and immigration status, and threatening closure of benefits against Dawn in case of non-compliance, despite Dawn's  in violation of U.S. Const. Amend. Amend. IV, V, XIV, 28 U.S.C. §2674, <u>Deserly v. Mont. Dept. of Corrections</u>, 2000 MT 12, 995 P.2d 972. 42 U.S.C. §1983. Individual Respondent STROPPEL knowingly or recklessly failed to supervise, train, or instruct Individual Respondent KOVACH, or to intervene Individual Respondent's actions,  whereby both, directly and indirectly, caused proximate harm to the Affected Parties.

**3.** Individual Respondents KOVACH and STROPPEL were, at all pertinent times, employees of the State Respondnets executing the SNAP program on behalf of the Federal Respondents, and the State and Federal

Respondents are liable under <u>Pelletier v. Fed. Home Loan Bank of S.F.</u>, 968 F.2d 865, 876 (1992).


## SECOND FEDERAL TORT CLAIM

[28 U.S.C. §2674, <u>Deserly v. Mont. Dept. of Corrections</u>, 2000 MT 12, 995 P.2d 972]


**1.** The Affected Parties reassert the allegations contained in ¶¶1 through 4, 6, 8, 14, 15, 18, 20 & 22, and the allegations contained in B., , *supra*.

**2.** Individual Respondent KUTZLER created, designed, or composed, and cause Eligibilty Notice Doc #4284360  to be sent to Dawn inquiring about Helge's personal information such as social security number, financial information, and immigration status, and threatening closure of benefits against Dawn in case of non-compliance, in violation of U.S. Const. Amend. Amend. V, XIV, 28 U.S.C. §2674, 18 U.S.C. §242, <u>Deserly v. Mont. Dept. of Corrections</u>, 2000 MT 12, 995 P.2d 972. Individual Respondent STROPPEL knowingly or recklessly failed to supervise, train, or instruct Individual Respondent KUTZLER, or to intervene Individual Respondent's actions,  whereby both, directly and indirectly, caused proximate harm to the Affected Parties.

**3.** Individual Respondents KUTZLER and STROPPEL were, at all pertinent times, employees of the State Respondnets executing the SNAP program on behalf of the Federal Respondents, and the State and Federal Respondents are liable under <u>Pelletier v. Fed. Home Loan Bank of S.F.</u>, 968 F.2d 865, 876 (1992).

## C. CLAIMS UNDER 42 U.S.C. §1983

The Affected Parties reassert the allegations contained in ¶¶1 through 4, 6, 8, 14, 15, 18, 20 & 22, and all of the allegations contained in B., , *supra*., against the State, Federal, and Individual Respondents.

## D. CLAIM UNDER 28 U.S.C. §2412(d)(1)

**1.** "In this circuit we apply a reasonableness standard in determining whether the government's position was substantially justified for purposes of the EAJA." Flores v. Shalala, 49 F.3d 562, 570 (9th Cir. 1995). "To show substantial justification for her position, the Secretary has the burden of establishing that the conduct had a 'reasonable basis both in law and fact.'" Kali v. Bowen, 854 F.2d 329, 332 (quoting Pierce v. Underwood, 487 U.S. 552, 565 [1988]). "In evaluating the government's position to determine whether it was substantially justified, we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir. 1987).

**2.** If a statute can be construed and applied in a Constitutional and an unconstitutional fashion, it must be construed and applied in a Constitutional way. See U.S. v. Chapman, 500 U.S. 453, 464 (1991). Further, Courts do not construe statutes in a manner that would lead to absurd results. See Ma v. Ashcroft, 361 F.3d 553, 561 (9th Cir. 2004). Similarly, Courts do not impute to Congress an intent to create a law that produces an unreasonable result. See U.S. v. Kaldenberg, 429 F.2d 161, 164 (9th Cir. 1970).

**3.** Here, the State Defendants' position that K.E.N. should be included as a beneficiary of SNAP under Dawn, and Helge being included in Dawn's

household due to K.E.N.'s mere existence, is not substantially justified. It is an unreasonable, uncostitutional interpretation of 7 U.S.C. §2012(n), because it violates K.E.N.'s fundamental right to be with his father, unconstitutionally intrudes upon the Affected Parties' rights under U.S. Const. Amend. Amend. IV, V, and XIV, is a waste of Federal resources, and violates Montana statutory law. The State Defendants' position is thus not substantially justified, but unreasonable. Given the inequities in resources, the imbalance of powers, and the persistence with which the State Defendants, through the Individiual Defendants, under the auspice of the Federl Respondents, have violated the Affected Parties' rights, the Affected Parties should be entitled to recover their cost of defending against such actions.

## D. PETITION FOR SUSPENSION OF FUNDING
[7 U.S.C. §2025, 7 C.F.R. §277.16]

APPLICABLE LEGAL PRINCIPALS

**1.** Pursuant to 7 U.S.C. §2025(a), 7 C.F.R. §235.5, the Federal Respondents fund up to 50% of the enumerated expenses incurred by the State Respondents in carrying out the responsibilities and intentions imposed and expressed in 7 U.S.C. §2011.

**2.** Pursuant to 7 U.S.C. §2025(c), the State Respondents operate under a quality control system monitored by the Federal Respondents to ensure the State Respondents' compliance with the requirements set forth in 7 U.S.C. §§2011 and further substatutory regulations.

**3.** Pursuant to 7 C.F.R. §277.16(a), the Federal Respondents may suspend or disallow expenses otherwise permissible to be paid to the State Respondents under 7 U.S.C. §2025(a) if a state agency has materially

failed to compy with any law, regulation, or other requirement for the administration of the SNAP program.

## MEMORANDUM IN SUPPORT OF IMMEDIATE SUSPENSION OF FUNDING

**The Court Should Order Suspension of the State Respondents' Funding under 7 U.S.C. §2025(a), 7 C.F.R. §277.16(a) Because the State Respondents Are Purposely Violating Constitutional and Statutory Laws in Order to Increase Their Own Revenue.**

**1.** The State Respondents rececive approximately $210MM from the Federal Respondents to carry out the SNAP program under 7 U.S.C. §§2011 et. seq. See USDA State Activity Report FY 2013 attached hereto as *Exhibit 25*. They retain approximately $20MM for their expenses authorized to be reimbursed under 7 U.S.C. §2025(a). See id. In other words, the more Federal benefits the State Respondents grant, the more Federal funds they get to keep for themselves. See 7 U.S.C. §2025(a)(1) and (3). The more questionable decisions the State Respondents have to trigger and defend in administrative proceedings under 7 C.F.R. §§273 et. seq., the more funds they get to keep for themselves. See 7 U.S.C. §2025(a)(5). Most significantly, the more beneficiaries the State Respondents seek to „persuade" to receive SNAP benefits, the more funds they get to keep for themselves. See 7 U.S.C. §2025(a)(4). Hence, the more immigrants can be „persuaded" to receive SNAP benefits, the more likely it will be for the Federal Respondents to need to fund „implementing and operating the immigration status verification system" and the more funds the State Respondents get to keep for themselves. See 7 U.S.C. §2025 (a)(8).

**2.** Here, the State Respondents know that Helge and his children are German citizens. They also agree that K.E.N. has never sought any benefits under 7 U.S.C. §§2011 et. seq. See Joint Stipulation OFH14-1474 executed 11-Jun-14 attached hereto as *Exhibit 21*. It is further undisputed that the State Respondents included K.E.N. by virtue of their own omnipotence. See MTDPHHS Eligibility Notice [Doc #4156898] dated 13-Mar-14 attached hereto as *Exhibit 08*. It is then obvious that the State Respondents discriminate on the basis of national orginin for revenue purposes under 7 U.S.C. §2025(a)(8) in their illegal attempts to „interest" Helge in the SNAP program [7 U.S.C. §2025(a)(4)-funds] to sign up [7 U.S.C. §2025(a)(1)-funding] by reeling in his newborn son K.E.N. [7 U.S.C. §2025(n)(3)-funding] through unlawful, unconstitutional application of the laws provided by Congress for a good purpose. They are willingly railroading the Affected Parties' Constitutional rights, just for the ulterior goal of unjustfiably increasing their own revenue at the expense of the Federal government and all Americans funding SNAP.

**3.** The Court should not tolerate the State Respondents' attempts to deceive the U.S. Department of Agriculture by inflating the amount of Federal funding it is receives under 7 U.S.C. §2025(a). The Court should not ignore the State Respondents' blinders blanking out people's Constitutional in their heist for an extra Federal dollar. Congress implemented the SNAP program with the holistic goal "to alleviate such hunger and malnutrition which will permit low-income households to obtain a more nutritious diet". See 7 U.S.C. §2011. If administering this program as-is is not profitable enough for the State Respondents, they are free to opt out. See 7 U.S.C. §2013(a). So are Helge and K.E.N. by choosing not to participate. See 7 U.S.C. §2011, Mont. Code Ann. §52-3-602(1).

## PRAYER FOR RELIEF

## WHEREFORE, K.E.N. and Helge respectfully move the Court to

**a.** overturn the State Respondents' Order issued 19 February 2015;
**b.** enjoin the State and Federal Respondents from treating K.E.N. as a household member of D Dawn's;
**c.** enjoin the State and Federal Respondents from treating Helge as a household member of Dawn's;
**d.** order MTDPHHS to treat K.E.N. as a household member of Helge's;
**e.** enjoin MTDPHHS from further intrusions upon the Affected Parties' respective rights and interests until one or both affirmatively apply for participation in the SNAP program;
**f.** reinstate SNAP benefits for Dawn's household in its original composition;
**g.** immediately suspend all Federal funds to which the State Respondents may be entitled under 7 U.S.C. §2025 until a quality control system is implemented that ensure lawful administration of the SNAP program towards the Federal Respondents and the Affected Parties;
**h.** award the Affected Parties damages to extent permitted by 28 U.S.C. §2476 and 42 U.S.C. §1983, respectively;
**i.** award the Affected Parties fees and other expenses incurred with the defense against State Respondents' actions to the extent permitted by 28 U.S.C. §2412(d)(1)(A); and
**j.** award any other just relief necessary and proper.

Respectfully submitted on 31 March 2015.

___/s/ Helge Naber__
Helge Naber
Montana Bar Id. 7059
*PRO PER* & *EX. REL.* K.E.N.